IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARLOS AZNAREZ GOMEZ, *et al.*,

    Plaintiffs,

v.                                       Civil Action No. 8:22-cv-03117-PX

THE HEIGHTS SCHOOL, *et al.*,

    Defendants.

\*\*\*

## MEMORANDUM OPINION

Pending in this personal injury action is Defendant The Heights, Inc.'s [1] (the "Heights") motion to dismiss the Complaint filed by parents Maria Paz Gomez Serrano and Carlos Aznarez Lumiber (hereinafter the "Parents") and their son, Carlos Arnarez Gomez (hereinafter "Carlos") pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 19. The matter has been fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion to dismiss is GRANTED, however Plaintiffs shall be given leave to file an amended complaint to cure the pleading deficiencies identified.

**I.    Background**

The following facts are set forth in the Complaint and construed in the light most favorable to Plaintiffs. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). The Heights is a private, independent, day school for boys in third through twelfth grade. ECF No. 1-1 ¶ 7. Plaintiffs are citizens and residents of Spain. *Id.* ¶¶ 4–6. On or about April 7, 2012, then nine-year-old Carlos traveled to the United States to participate in the El Redin School Student

---

[1] In its memorandum in support of its motion to dismiss, The Heights, Inc. clarified that its name is "The Heights, Inc." rather than "The Heights School." *See* ECF No. 19-1 at 1 n.1.

Exchange Program at the Heights. *Id.* ¶ 10. The Heights arranged for Carlos to stay with his host, co-Defendant, Theodore Nealson Smart, while in the program. *Id.* ¶ 11.

The Complaint avers, with no factual support, that the Heights assumed a "primary role" in protecting Carlos while he was in the program. *Id.* ¶ 29. The Complaint further alleges that the Parents and the Heights entered into an "implied-in-fact" contract where the Heights agreed to "ensure the safety and well-being" of Carlos by finding an "appropriate" host family and "supervising" that family in exchange for the Parents' permission for Carlos to participate in the program. *Id.* ¶ 41.

While living with Smart, Carlos slept in the same room as Smart's youngest son. *Id.* ¶ 12. One day while Carlos was alone in the bedroom, Smart sodomized Carlos. *Id.* ¶¶ 13–17. Carlos suffered significant physical and lasting psychological injuries as a result. *Id.* ¶¶ 16, 18, 20. To this day, Carlos requires regular therapy. *Id.* ¶ 20. In August 2019, the State of Maryland-Child Protective Services learned that Smart had sexually abused Carlos. *Id.* ¶ 21. Smart was criminally prosecuted but was ultimately acquitted of all charges after a jury trial. *Id.* ¶¶ 22–23.

On December 2, 2022, Plaintiffs filed this civil suit against Smart and the Heights. As to Smart, the Plaintiffs allege common law claims of assault, battery, intentional infliction of emotional distress, and loss of consortium (presumably as to the Parents). *Id.* ¶¶ 48–59 (Counts V–VIII).[2] Smart has answered the Complaint. ECF No. 15.

As to the Heights, the Complaint alleges three claims sounding in negligence—negligent selection, placement, training, and supervision/monitoring of Smart (Count I); gross negligence (Count II); and breach of fiduciary duty (Count IV)—all based on the same theory that the

---

[2] The Complaint lists both intentional infliction of emotional distress and loss of consortium as Count VII. ECF No. 1-1 at 8–9. However, loss of consortium is Count VIII.

Heights, as the school sponsoring the program, bears legal responsibility for Carlos' injuries. *Id.* ¶¶ 33–39, 44–47. The Parents also bring a breach of implied-in-fact contract claim against the Heights (Count III). *Id.* ¶¶ 40–43.

The Heights now moves to dismiss all claims as to it. ECF No. 19. Regarding those that sound in negligence, the Heights argues that no facts make plausible that it owed a duty of care to the Plaintiffs. ECF No. 19-1 at 3–10, 11. Regarding the breach of implied contract claim, the Heights maintains that the Complaint is so barebones that this claim too must be dismissed. *Id.* at 10–11. For the following reasons, the Court agrees and will grant the motion.

## II.     Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). However, the "Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Nor do courts need to "accept as true a legal conclusion couched as a factual allegation*.*" *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Iqbal*, 556 U.S. at 663 (". . . the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must be able to deduce "more than the mere possibility of misconduct" and the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *Ruffin v. Lockheed Martin Corp.*, 126 F.

Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016).

With this standard in mind, the Court turns to the sufficiency of the claims.

### III. Analysis

#### A. Negligence claims (Counts I, II and IV)

The Plaintiffs bring three claims sounding in negligence. To survive dismissal, the Complaint must aver facts sufficient to make plausible four well-known elements: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the plaintiff suffered an injury; and (4) the breach proximately caused the injury. *Jones v. Family Health Ctrs. of Baltimore, Inc.*, 135 F. Supp. 3d 372, 381 (D. Md. 2015) (quoting *Jones v. State*, 425 Md. 1, 18 (2012)); *cf. Heward v. Bd. of Educ. of Anne Arundel Cnty.*, No. 1:23-00195-ELH, 2023 WL 6381498, at *61 (D. Md. Sept. 29, 2023) (reasoning that adequately pleaded negligence claim also satisfied fiduciary duty claim); *Gandy v. Howard Cnty. Bd. of Educ.*, No. GLR-20-3436, 2021 WL 3911892, at *5 n. 4 (D. Md. Sept. 1, 2021) (". . . the elements of a breach of fiduciary duty claim mirror the elements of a negligence claim").

In this motion, the parties focus on whether sufficient facts make plausible that the Heights owed a duty of care to Carlos. *See* ECF No. 19-1 at 3–6; ECF No. 22-2 at 2–4. The Complaint pleads a vicarious duty, that is, a duty of care extended to the Heights through Smart as the "employee[], agent[], and servant[]" of the Heights. ECF No. 1-1 ¶ 9. At its core, "agency" is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Green v. H&R Block, Inc.*, 355 Md. 488, 503 (1999) (quoting Restatement (Second) of Agency § 1 (1958)). Whether an agency relationship exists depends on "the parties'

4

x

intentions as manifested by their agreements or actions." *Id.* at 503.  Pertinent considerations include: (1) the agent's power to alter the principal's legal relations; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent. *Id.* When the agent acts within the scope of his employment and at the principal's behest, the principal may be vicariously liable for the agent's tortious acts. *Globe Indem. Co. v. Victill Corp.*, 208 Md. 573, 581–82 (1956).

The Complaint avers few facts which make plausible such a relationship existed between Smart and the Heights.  Viewing the few facts pleaded most favorably to the Plaintiffs, Carlos came to the United States as part of an exchange program at the Heights.  ECF No. 1-1 ¶ 10.  The Heights "arranged" for Carlos to stay with Smart, but the Complaint is silent as to when, how, where, and under what conditions such "arrangement" was made.  *Id.* ¶ 11.  The Complaint, for example, does not describe whether Smart was a paid employee, an independent contractor, or volunteer; whether Smart was required to follow the Heights' directives; whether the Heights had any such directives or any ability to control how Smart executed his duties as a host; or any other facts that make plausible Smart was in fact acting at the behest of the Heights sufficient to establish an principal-agency relationship.  *See Green*, 355 Md. at 503.  Thus, as pleaded, the claim fails to make plausible the Heights had any such duty of care as to Carlos.

The Plaintiffs in response, broadly argue that they have asserted sufficient facts to establish agency, but they point only to bare legal allegations "devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted); ECF No. 22-2 at 2–4.  The Complaint broadly asserts that the Heights "ratified" Smart's actions; that the Heights generally stands "*in loco parentis*"[3] for the students; that the Heights "assumed a primary role in the protection of

---

[3] *In loco parentis* is shorthand for those "certain circumstances," where "a special relationship exists between a school district and its students." *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669

5

Carlos," and the Heights "should have known by the exercise of diligence and reasonable care that Smart was capable of inflicting harm on Carlos." *Id.* ¶¶ 9, 25, 29, 30. But not one *fact* establishes, for example, the "ratification" of Smart's actions, or how the Heights "should have known" that Smart was "capable of inflicting harm." *See id.* Mere "legal conclusion[s] couched as factual allegation[s]" will not suffice. *Twombly*, 550 U.S. at 555 (quoting *Papasan*, 478 U.S. at 286).

Perhaps the only averred fact of consequence is that the Heights had "arranged" for Carlos to live with Smart while in the Heights exchange program. ECF No. 1-1 at ¶ 11. Nonetheless, the Complaint falls short in that no other facts make plausible that the "arrangement" transformed the relationship into one of principal to agent, let alone make plausible that the Heights "ratified" Smart's sexual assault. *See Globe Indem. Co.*, 208 Md. at 581–82; ECF No. 19-1 at 3. Without more, the Complaint does not make plausible such liability theory. The negligence-based claims are dismissed on this basis alone.

Alternatively, even if the claims could survive as to the element of duty, no alleged facts make plausible that any such duties were breached. As best the Court can tell, Plaintiffs' liability theory centers on the Heights' purported failure to exercise reasonable care in hiring, training,

---

(D. Md. 2012). It customarily covers duties that arise while the students are in school. *Eisel v. Bd. of Educ. of Montgomery Cnty.*, 324 Md. 376, 384 (1991) (recognizing that "the doctrine that the relation of a school vis a vis a pupil is analogous to one who stands in loco parentis, with the result that a school is under a special duty to exercise reasonable care to protect a pupil from harm" (quoting *Lunsford v. Bd. of Educ.*, 280 Md. 665, 676 (1977)); *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 668 (D. Md. 2021) (finding that school board had a duty to protect a student when another student's violence towards her escalated at school and resulted in other student shooting her); *Gandy,* 2021 WL 3911892, at *6 (holding that teachers had duty to keep student safe while he was in their custody and control pursuant to *in loco parentis* doctrine because schools are "temporary custodians of children" (quoting *Loveless v. Estevez*, No. 01985, 2019 WL 4187465, at *6 (Md. Ct. Spec. App. Sept. 3, 2019)). By contrast, *in loco parentis* does not apply where the facts reveal "no intention that the relevant institution may 'exercise [] authority and control.'" *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 420 (D. Md. 2022) (citations omitted); *see Doe on behalf of Doe v. Small*, No. 1:21-11189, 2023 WL 1750405, at *18 (D.N.J. Feb. 2, 2023) (finding complaint did not allege that principal stood *in loco parentis* with student at principal's home but plausibly suggested that she was *in loco parentis* with student at school). This is all to say that the Plaintiffs cannot plead the legal doctrine of *in loco parentis* in place of facts making plausible the same.

and supervising Smart. ECF No. 1-1 at ¶ 34. But again, the Complaint avers no facts in this regard. *Cf. A.M. by Cooper v. Virginia Council of Churches*, No. RDB-20-00287, 2020 WL 6702999, at *8 (D. Md. Nov. 13, 2020) (citing *Johnson v. Baltimore Police Dept.*, 452 F. Supp. 3d 283, 309 (D. Md. 2020)). The Complaint gives not one detail about *how* the Heights "selected" Smart, or any facts suggesting that the Heights had an obligation to provide training and supervision, and thereafter, fell down on that job. *Cf. Willey*, 557 F. Supp. 3d at 668 (finding that plaintiffs plausibly alleged that school board breached its duty to protect student because plaintiffs alleged that board did not implement reasonable security measures after being aware of threats to student and student was later assaulted and killed); *Buettner-Hartsoe v. Baltimore Lutheran High Sch. Ass'n*, No. RDB-20-3132, 2021 WL 2580385, at *16–18 (D. Md. June 23, 2021) (denying school's motion to dismiss because it failed to address plaintiffs' multiple allegations of sexual harassment and assault despite plaintiffs' and teachers' continued reports and complaints to school's administration and board); *Gandy*, 2021 WL 3911892, at *6 (holding that claim against principal survived motion to dismiss because principal was specifically aware of risks of autistic child getting injured from teachers' lack of experience). Bare allegations that the Heights knew or should have known about Smart's propensity for harm it not sufficient. Thus, the claims fail for this reason as well.

     In sum, the negligence-based claims do not survive challenge principally because no facts make plausible that the Heights owed a duty to Carlos based on its agency relationship with Smart. Further, assuming such agency relationship existed, no facts establish a breach of such duty. Thus, the Heights' motion must be granted as to Counts I, II, and IV.[4]

---

[4] Although the gross negligence claim (Count II) fails for these reasons, it also suffers from additional pleading problems. Gross negligence requires the Plaintiffs also to make plausible "an intentional failure to perform a manifest duty and reckless disregard of the consequences as affecting the life and property of another." *Bailey v. City of Annapolis*, 252 Md. App. 83, 98 (2019) (quoting *Howard v. Crumlin*, 239 Md. App. 515, 529 (2018)

B. **Implied Contract Claim (Count III)**

Count III alleges that the Heights beached an implied-in-fact contract with the Parents reneging on its promise to keep Carlos safe. ECF No. 1-1 ¶¶ 41–42. An implied-in-fact contract is "evidenced by the parties' 'conduct, rather than an explicit set of words.'" *State Constr. Corp. v. Slone Assocs., Inc.*, 385 F. Supp. 3d 449, 463 (D. Md. 2019) (quoting *Mogavero v. Silverstein*, 142 Md. App. 259, 275 (2002) (citations omitted)). As with written contracts, an implied-in-fact contract "requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration" to form. *Id.* at 464–65 (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)).

For an agreement to be sufficiently "definite," the parties need to "express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean." *Mogavero*, 142 Md. App. at 271–72 (quoting *Robinson v. Gardiner*, 196 Md. 213, 217 (1950)) (holding that contract was too vague regarding the nature and extent of plaintiff's duties when oral agreement was plaintiff would help defendant "with construction end of the project in return for a fee of 5% of estimated construction contract [costs]"). A contract's "language must . . . be sufficiently definite to clearly inform the parties to it of what they may be called upon by its terms to do, but also must be sufficiently clear and definite in order that the courts . . . may be able to know the purpose and intention of the parties." *Id.* at 272 (emphasis omitted); *see Dolan v. McQuaide*, 215 Md. App. 24, 29–30, 37 (2013) (finding that plaintiff's agreement to do "planning" for the business could not bind defendant to implied-in-fact contract that they would be equal partners in the venture and share new profits equally).

---

(citations omitted)). No factual averments make plausible that the Heights exhibited an intentional or reckless disregard for the life and safety of Carlos, and so the claim fails for this reason as well.

The Complaint fails to aver any facts which support the existence of an implied-in-fact contract. *See State Constr. Corp.*, 385 F. Supp. 3d at 464–65. Indeed, nothing is even pleaded as to what, if any, interaction the Parents had directly or indirectly with the Heights. *See id.* at 463. Again, merely averring the existence of a legal construct—a contract—does not "nudge[] their claim[] cross the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Because the Complaint is devoid of facts as basic as the when, where, and how the Parents came to any relevant "agreement" with the Heights, this claim, too, fails. *See Mogavero*, 142 Md. App. at 272. The motion to dismiss is granted as to Count III.

### C. Dismissal with or Without Prejudice

Last, the Court must decide whether the claims should be dismissed with or without prejudice. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013). Generally, when a plaintiff has not been afforded an opportunity to amend the complaint, dismissal should be without prejudice. *Cosner v. Dodt*, 526 F. App'x 252, 253 (4th Cir. 2013). However, when the claims suffer from legal defects that make the claims unamendable, dismissal with prejudice is warranted. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

Plaintiffs seek leave to amend the Complaint. ECF No. 22-2 at 7–8. The Heights opposes the request on futility grounds. ECF No. 23-1 at 5–6. The Heights rightly points out that if Plaintiffs persist in couching legal conclusions as "facts," any amended complaint will be a wasted exercise. *Id.* That said, the case is in its infancy and Plaintiffs have not previously sought leave to amend. Accordingly, the Court will give Plaintiffs one opportunity to amend the Complaint to add sufficient facts that make the claims plausible. The Plaintiffs must file their amended complaint within 21 days from the date of this Opinion and Order. Failure to file an

amended complaint will result in the Court dismissing the original Complaint with prejudice and without further warning.

## IV.     Conclusion

For the foregoing reasons, the Court GRANTS the motion to dismiss, but will allow Plaintiffs one opportunity to amend the Complaint as to the Heights only, to cure the defects identified within 21 days from the date of this Opinion and Order. The Heights shall have 14 days from the date of the filing of the amended complaint to answer or otherwise respond. Should the Plaintiffs fail to file an amended complaint, the original Complaint as to the Heights (Counts I-IV) will be dismissed with prejudice and without further notice.

A separate Order follows.


| November 1, 2023 | /s/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |