IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARLOS AZNAREZ GOMEZ, *et al.*,              *

    Plaintiffs,                                              *

v.                                                                        *      Civil Action No. 8:22-cv-03117-PX

                                                                   *

THE HEIGHTS, INC., *et al.*,                      *

    Defendants.                                          *
***

## MEMORANDUM OPINION

Pending in this personal injury action is Defendant The Heights, Inc.'s (the "Heights") motion to dismiss the Second Amended Complaint. ECF No. 31. Previously, the Court ruled that the First Amended Complaint failed to state a claim but gave Plaintiffs the opportunity to file an amended complaint to cure the pleading deficiencies. ECF Nos. 24 & 25. Plaintiffs have filed not one but two amendments to the Complaint. ECF Nos. 29 & 37. For the following reasons, the claims still fail as a matter of law.

**I.     Background**[1]

The Heights is a private, independent, preparatory school for boys in third through twelfth grade. ECF No. 37 ¶ 7. Plaintiffs are parents Maria Paz Gomez Serrano and Carlos Aznarez Lumiber (the "Parents") and their son, Carlos Aznarez Gomez ("Carlos"). *Id.* ¶¶ 4–6. They are citizens and residents of Spain. *Id.*

Sometime prior to 2012, the Heights established the four-week El Redin Student Exchange Program (the "El Redin Program" or "Program") with Carlos' school in Spain. ECF No. 37 ¶¶ 11–12. The Heights assumed responsibility for the organization and execution of the

---

[1] These facts are derived from the Second Amended Complaint and construed most favorably to Plaintiffs. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

El Redin Program, to include the selection of host families, making travel arrangements for the student visitors, and obtaining necessary visas. *Id.* ¶¶ 13, 21, 24; *see* Ex. E, ECF No. 37 at 62.

In 2012, the Parents agreed that Carlos would participate in the El Redin Program. ECF No. 37 ¶ 24. The Parents completed a student questionnaire and written permission form for Carlos to travel. *Id.* ¶¶ 26–27; Exs. F & G, ECF No. 37 at 65–70. On April 4, 2012, three days before Carlos was to fly to the United States, the Heights informed Plaintiffs that it arranged for Carlos to stay with the Smart family, the volunteer hosts. ECF No. 37 ¶¶ 29–33, 36.

The Second Amended Complaint includes few documents from the El Redin Program but cites liberally to documents not related to the Program. *See* ECF No. 37 at 19–73. Pertinent to a 2023 secondary school year-long exchange program, implemented eleven years after the El Redin Program, the Heights describes finding a host family for visiting students an "important task." *Id.* ¶ 19; Ex. D, ECF No. 37 at 54. The Heights further proclaims that for the 2023 program, it spent considerable time searching for host families; that the school's standards for host families are "high"; and that it would not place "a visitor in a home where we would not place our own sons." Ex. D, ECF No. 37 at 54–55.

The Second Amended Complaint also incorporates federal regulations pertinent to the "Department of State designated exchange visitor programs." *See* Ex. C, ECF No. 37 at 42–52 (22 C.F.R. § 62.25). But again, no facts indicate the El Redin Program qualifies as such a program, and the Plaintiffs essentially admit as much. ECF No. 37 ¶ 16 ("although perhaps not directly applicable to the Exchange Program . . . [the regulations] nevertheless reflect best practices."). By contrast, for the El Redin Program, the Heights literature notes only that "host families chosen by the school" will be disclosed "ahead of time" to parents, and that the host

family will provide food, lodging, and transportation for the student visitor.  *Id.* ¶¶ 24, 32; Ex. E, ECF No. 37 at 62.

On or about April 7, 2012, then nine-year-old Carlos traveled to the United States to participate in the El Redin Program.  ECF No. 37 ¶ 37.  While living with the Smart family, Carlos slept in the same room as the Smart family's youngest son.  *Id.* ¶ 38.  One day while Carlos was alone in the bedroom, Defendant Theodore Smart, the Smart family's father, sodomized Carlos.  *Id.* ¶¶ 39–43.  Carlos suffered significant physical and psychological injuries as a result.  *Id.* ¶¶ 42, 44, 50.  No representative from the Heights ever visited Carlos while he was at the Smart residence, although it appears that Carlos attended the Heights school program without incident and saw it to completion.  *Id.* ¶¶ 47–48.  Carlos did not report the sexual assault to the Heights and returned to Spain in May 2012.  *Id.* ¶¶ 46–48.

Eventually, the Parents learned that Smart had sexually assaulted Carlos.  Carlos was diagnosed with a host of psychological injuries as a result.  *See* ECF No. 37 ¶ 50.  Smart faced criminal prosecution in 2019 for harming Carlos, but ultimately was acquitted of all charges.  *Id.* ¶¶ 51–53.  After the not-guilty verdict, the current Heights headmaster emailed the Parents to inform them that "Carlos' case has provoked a thorough review of the process by which we select host families for our international programs, a review that has been very helpful to us and that we hope will improve these programs."  *Id.* ¶ 54.

On December 2, 2022, Plaintiffs filed suit against Smart and the Heights.  ECF No. 1.  As to the Heights, the Complaint alleged negligent selection, placement, training, and supervision/monitoring of Smart (Count I); gross negligence (Count II); breach of implied-in-

3

fact contract (Count III); and breach of fiduciary duty (Count IV). ECF No. 1-1.[2] For the claims sounding in negligence, Plaintiffs averred that the Heights assumed liability for Smart's assaultive conduct because Smart was an agent of the Heights and because the Heights had a special duty of care as it stood *in loco parentis* to Carlos. *Id.* ¶¶ 9, 25, 26, 29, 31. The Complaint also broadly averred that the Heights and the Parents had entered an implied-in-fact contract in which the Heights agreed to ensure Carlos' safety with his host family. *Id.* ¶ 41.

On March 7, 2023, the Heights moved to dismiss all claims against it. ECF No. 19. The Court granted the motion, finding no facts made plausible a duty of care owed to Carlos or the existence of a sufficiently definite contractual promise to keep Carlos safe at his host family's home. *See* ECF No. 24 at 5–6, 9 & n.3. The Court permitted Plaintiffs an opportunity to amend the Complaint. ECF Nos. 24 & 25.

Plaintiffs timely amended the Complaint. ECF Nos. 29 & 29-1. The Heights, in turn, renewed its motion to dismiss. ECF No. 31. Plaintiffs then filed a Second Amended Complaint principally to include English translations for certain exhibits that they had filed solely in Spanish. ECF No. 37.[3] Because the first and second Amended Complaint are identical in all material respects, the Court will grant the amendment and treat the motion to dismiss as it pertains to the Second Amended Complaint.

## II.   Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court must "accept the

---

[2] The Complaint also alleged common law claims of assault, battery, intentional infliction of emotional distress, and loss of consortium against Smart. ECF No. 1-1 ¶¶ 48–59. Smart answered the Complaint on March 3, 2023. ECF No. 15.

[3] Plaintiffs did not seek leave of the Court to file the Second Amended Complaint as required. *See* Fed. R. Civ. P. 15(a)(2). However, because the Second Amended Complaint is identical to the First Amended Complaint, the Court treats it as the operative Complaint.

factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). However, the "Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Nor do courts need to "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Iqbal*, 556 U.S. at 663 (". . . the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must be able to deduce "more than the mere possibility of misconduct" and the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016).

**III.    Analysis**

    **A.    Negligence Claims (Counts I, II, and IV)**

The Heights, once again, argues that the Second Amended Complaint fails to make plausible that it owed a duty of care directly or indirectly to Carlos. ECF No. 31-1 at 6–7, 11–12. The Court agrees. For any claim sounding in negligence, the plaintiff must plausibly aver the existence of a legal duty of care that the defendant owed the plaintiff, and that the breach of such duty proximately caused the plaintiff harm. *Jones v. Family Health Ctrs. of Baltimore, Inc.*, 135 F. Supp. 3d 372, 381 (D. Md. 2015) (quoting *Jones v. State*, 425 Md. 1, 18 (2012)); *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212–13 (2013). Where no such duty

5

of care exists, then no negligence claim shall lie. *Kennedy Krieger Inst., Inc. v. Partlow*, 460 Md. 607, 633 (2018) ("Because 'there can be no negligence where there is no duty that is due,' an analysis as to negligence 'usually begins with the question of whether a legally cognizable duty exists.'" (internal markings omitted) (quoting *Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 414 (2005))); *see also Heward v. Bd. of Educ. of Anne Arundel Cnty.*, No. 23-00195-ELH, 2023 WL 6381498, at *61 (D. Md. Sept. 29, 2023) (duty of care essential for breach of fiduciary duty claim); *Gandy v. Howard Cnty. Bd. of Educ.*, No. GLR-20-3436, 2021 WL 3911892, at *5 n.4 (D. Md. Sept. 1, 2021) ("the elements of a breach of fiduciary duty claim mirror the elements of a negligence claim."); *Bailey v. City of Annapolis*, 252 Md. App. 83, 98 (2019) (gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences.").

The Second Amended Complaint advances the same two theories of duty as before: that the Heights owed a duty of care to Carlos (1) because Smart was an agent of the school, and (2) because the Heights stood *in loco parentis* as to Carlos. *See* ECF No. 37 ¶¶ 23, 34–35, 55–56. Still, neither theory is availing.

Beginning with whether Smart was an agent of the Heights, agency is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Green v. H&R Block, Inc.*, 355 Md. 488, 503 (1999) (quoting Restatement (Second) of Agency § 1 (1958)). An agency relationship depends on "the parties' intentions as manifested by their agreements or actions." *Id.* Pertinent considerations include: (1) the agent's power to alter the principal's legal relations; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent. *Id.*

In the Second Amended Complaint, the only new fact of consequence is that the Heights had selected volunteer host families who, in turn, agreed to provide visitor students with accommodations, meals, and transportation.  *See* ECF No. 37 ¶¶ 24, 29–31.  But the Second Amended Complaint is silent on any other details regarding what relationship, if any, existed between the host families and the Heights.  *See id.*  Accordingly, no facts permit the plausible inference that the Heights, as putative "principal," controlled the terms or conditions under which Smart fulfilled his role as host parent.  *See id.*  That the Parents "believed" the Heights exerted some unspecified "authority" or "control" over Smart does not create an agency relationship.  *See Green*, 355 Md. at 503; *Proctor v. Holden,* 75 Md. App. 1, 20–21, *cert. denied*, 313 Md. 506 (1988).

Nor do any of the voluminous materials appended to the Second Amended Complaint change the analysis.  The details surrounding host families and student placements for the 2023 program bears no relationship to the 2012 El Redin Program.  *See* Ex. B, ECF No. 37 at 54–57.  Likewise, regulations governing "State Department" exchange programs, without more, cannot plausibly set any standards for how the Heights and host families worked together in 2012 for the Program.  *See* Ex. C, ECF No. 37 at 42–52.  At bottom, therefore, the Second Amended Complaint pleads no facts from which to infer that the Heights bore a duty of care under a principal-agent theory.

Similarly, as to the second theory of duty, no facts establish that the Heights stood in *in loco parentis* as to Carlos via his placement in the Smart household.  Generally, a defendant owes no duty to protect another from harm inflicted by a third person.  *Doe v. Bd. of Educ. of Prince George's Cnty*., 888 F. Supp. 2d 659, 669 (D. Md. 2012).  However, the duty may arise where the plaintiff and defendant enjoy a special relationship that requires the defendant to

"exercise reasonable care to protect a pupil from harm." *Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 481 Md. 274, 314–15 (2022) (quoting *Eisel v. Bd. of Educ. of Montgomery Cnty.*, 324 Md. 376, 384 (1991)).  A school assumes such duty most clearly when the parents "relinquish their supervisory role over their children to teachers and administrators during school hours"; and in that circumstance, the school is responsible for protecting the student from "foreseeable dangers, whether those dangers arise from the careless acts or intentional transgressions of others." *In re Gloria H.*, 410 Md. 562, 583 (2009) (quoting *Frugis v. Bracigliano*, 177 N.J. 250, 268 (2003)); *see also Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 668 (D. Md. 2021).  Notably, liability extends to the school largely because the risk of injury from the third party is "foreseeable" to the school.  *See In re Gloria H.*, 410 Md. at 583.  Indeed, foreseeability remains "the most important variable in the duty calculus." *Doe on behalf of Doe v. Small*, 654 F. Supp. 3d 376, 403 (D.N.J. 2023).  This is especially so where "the failure to exercise due care creates risks of personal injury." *Pendleton v. State*, 398 Md. 447, 462 (2007) (quoting *Jacques v. First Nat'l Bank of Maryland*, 307 Md. 527, 535 (1986) (citations omitted)).

When viewing the Second Amended Complaint most favorably to Plaintiffs, no facts make plausible that the risks presented to Carlos while he was placed with the Smart family were foreseeable to the Heights.  *See* ECF No. 37.  First, no facts establish the nature of the relationship between the Heights and the Smarts.  The Smarts volunteered to host Carlos.  *See id.* ¶ 31.  Mr. Smart did not work for the school, nor do any facts suggest he was even part of the El Redin Program at the school.  *See id.*  And even though the Heights knew that Carlos would be in the Smarts' care during after school hours, nothing raised any red flags for the Heights in advance of the placement.  *See id.*; *In re Gloria H.*, 410 Md. at 583.  Although the Second Amended Complaint broadly alleges that the Heights failed to implement "best practices," in

8

selecting host families, it gives not one example of the Heights actually agreeing, and then failing, to perform any such due diligence as part of the Program.  *See* ECF No. 37 ¶ 49.  That Plaintiffs had learned the identity of Carlos' host family only three days before the program began, when other families learned two weeks in advance, bears little on whether the Heights assumed the responsibility to investigate the Smarts' suitability and then failed to honor that responsibility.  *See id.* ¶ 36.

At bottom, Plaintiffs ask the Court to speculate that Carlos was horribly injured because the Heights failed to protect Carlos from Smart.  But no facts make plausible that such risk was foreseeable to the Heights such that it assumed a special duty of care to Carlos outside school hours or off school grounds.  *Cf. Pendleton*, 398 Md. at 476 (no special duty to protect teenage ward from risk of sexual assault in foster home); *Small*, 654 Fl. Supp. 3d at 398 (complaint failed to plead foreseeability because no facts suggested principal knew about teacher's pattern of sexual abuse outside school); *see also H.B.H. v. State*, 192 Wash. 2d 154, 176–77 (2018) (no duty of care despite "special protective relationship" if "a reasonable person in defendant's position would [not] be aware of a 'general field of danger' posing a risk.").  Because no facts make plausible that the Heights assumed any special duty to Carlos for his placement with the Smarts, the negligence claims fail once again.  The Heights' motion is granted as to Counts I, II, and IV.

      **B.**    **Implied Contract Claim (Count III)**

Count III alleges that the Heights breached an implied-in-fact contract with the Parents by reneging on its promise to keep Carlos safe.  ECF No. 37 ¶¶ 65–66.  The Heights renews its argument that Plaintiffs fail to aver sufficient facts to establish an implied-in-fact contract.  ECF No. 31-1 at 9–11.  The Court agrees.  An implied-in-fact contract is "evidenced by the parties'

9

'conduct, rather than an explicit set of words.'" *State Constr. Corp. v. Slone Assocs., Inc.*, 385 F. Supp. 3d 449, 463 (D. Md. 2019) (quoting *Mogavero v. Silverstein*, 142 Md. App. 259, 275 (2002) (citations omitted)). As with written contracts, an implied-in-fact contract "requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration" to form. *Id*. at 464–65 (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)); *see also Botts v. Johns Hopkins University*, No. ELH-20-1561520, 2021 WL 1561520, at *10 (D. Md. Apr. 21, 2021) (collecting cases) ("[m]utual assent is an integral component of every contract.").

    For an agreement to be sufficiently "definite," the parties need to "express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean." *Mogavero*, 142 Md. App. at 271–72 (quoting *Robinson v. Gardiner*, 196 Md. 213, 217 (1950)) (holding that the nature and extent of the plaintiff's duties in the contract were too vague despite an oral agreement that the plaintiff would help defendant "with construction end of the project in return for a fee of 5% of estimated construction contract [costs].").  A contract must "clearly inform the parties to it of what they may be called upon by its terms to do, but also must be sufficiently clear and definite in order that the courts . . . may be able to know the purpose and intention of the parties." *Id.* at 272 (emphasis omitted); *see Dolan v. McQuaide*, 215 Md. App. 24, 29–30, 36–37 (2013) (finding that plaintiff's agreement to do "planning" for the business could not bind defendant to an implied-in-fact contract that they would be equal partners in the venture and share new profits equally).

    Again, Plaintiffs fail to make plausible the existence of a sufficiently definite agreement necessary to proceed.  At best, the Second Amended Complaint makes plausible that the Heights agreed to obtain the necessary visas, make travel arrangements, and select a host family who

would provide food, shelter, and transportation for Carlos. *See* ECF No. 37 ¶ 24. But nothing suggests that the Heights specifically agreed to any terms beyond that, particularly terms that required the Heights to assume the obligation of keeping Carlos safe while he was with the Smart family. *See id.* ¶ 65. The conclusory averment that the Heights agreed to "ensure the safety and wellbeing" of Carlos, without more, is simply too vague and indefinite to be enforceable as an implied-in-fact contract. *See id.*; *Mogavero*, 142 Md. App. at 271–72. Thus, the claim fails as a matter of law.

### IV.     Dismissal With or Without Prejudice

Plaintiffs have been given the opportunity to cure the pleading defects. *See* ECF Nos. 24 & 25. They have filed not one, but two amended Complaints. *See* ECF Nos. 29 & 37. The Court has considered the sufficiency of the Second Amended Complaint, and yet the claims still fail as a matter of law. Generally, the Court will dismiss with prejudice claims that remain insufficient after multiple opportunities to amend. Plaintiffs, however, urge that the Court should permit additional amendment because, absent discovery, they do not have access to documents or other evidence as to what, if any, agreement Smart and the Heights entered, or any detail regarding the Heights supervision of the Smarts as a host family. ECF No. 36-2 at 7–8.

The case against Smart will proceed. *See* ECF No. 15. And in connection with the case against Smart, Plaintiffs may explore the terms of his service as a parent volunteer, to include any oral or written agreement he entered with the Heights. Similarly, Plaintiffs may issue subpoenas on the Heights to obtain any relevant documentary evidence in connection with this case. It is conceivable, therefore, that after some discovery is taken in Smart's case, Plaintiffs could amend to include claims against the Heights. Thus, out of an abundance of caution, the claims against the Heights will be dismissed without prejudice.

The Court will issue a Scheduling Order that will provide a date for amendment of pleadings within the discovery period. This deadline is intended to permit Plaintiffs one final opportunity at amendment after they have explored the Heights' purported oversight and involvement with Smart. Plaintiffs are advised to handle discovery efficiently and proactively because the Court will not entertain late motions to amend.

## V.     Conclusion

For the foregoing reasons, the Court GRANTS the motion to dismiss, and dismisses all claims against the Heights without prejudice. A separate Order follows.

August 28, 2024  /s/
Date  Paula Xinis
     United States District Judge